| | | |
|---|---|---|
| ANTHONY PORTER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00139-AGF |
| | ) | |
| CAPE GIRARDEAU COUNTY | ) | |
| SHERIFF'S OFFICE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Anthony Porter for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will not assess an initial partial filing fee at this time. Additionally, for the reasons discussed below, the Court will dismiss the claims against defendants Cape Girardeau County Sheriff's Office, Cape Girardeau County Jail, Cape Girardeau County Justice Center, Sheriff John Jordan, Captain James Mulcahy, and Deputy Boliva, and will direct the Clerk of Court to issue process upon defendants Lieutenant Todd Stevens, Officer Crites, and Deputy Colyer in their individual capacities.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits to the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-

month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion, plaintiff has submitted a certified inmate account statement. (Docket No. 6). Plaintiff's certified inmate account statement shows that plaintiff has a negative account balance. Accordingly, the Court will not require plaintiff to pay an initial partial filing fee at this time. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"). However, plaintiff is not excused from paying the filing fee. The agency having custody of plaintiff will be directed to begin forwarding payments from plaintiff's inmate account, pursuant to 28 U.S.C. § 1915(b)(2), until the $350.00 filing fee is paid in full.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief under 42 U.S.C. § 1983, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but "does not accept as true any legal conclusion couched as a factual allegation"). A plaintiff must demonstrate a plausible claim for relief, which

is more than a "mere possibility of misconduct." *Ashcroft*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679.

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

At the time the events in the complaint occurred, plaintiff was incarcerated at the Cape Girardeau County Jail. He brings this action pursuant to 42 U.S.C. § 1983. Plaintiff names the following defendants in his lawsuit: Cape Girardeau County Sheriff's Office; Cape Girardeau County Jail; Cape Girardeau County Justice Center; Sheriff John Jordan; James Mulcahy; Todd

Stevens; Unknown Crites; Unknown Boliva; and Unknown Colyer. The defendants are sued in their individual capacities.

Plaintiff's complaint consists of five separate claims. Claim 1 is directed at defendant Stevens, a lieutenant at the jail. (Docket No. 1 at 8). Plaintiff states that on June 12, 2017, he got onto the intercom to inform a correctional officer that his food tray had been shortened. Specifically, plaintiff had received a slice of bologna, two tortilla shells, and a slot of corn. He complained to the officer that he had been getting three meals like this a day, and that his caloric needs were not being met. Apparently, plaintiff was told that something else would be sent to him from the kitchen. Plaintiff alleges, however, that defendant Stevens came onto the intercom and told plaintiff: "You['re] not getting s—t else." Stevens also allegedly said: "You['re] not getting nothing, get in your room." Plaintiff responded by saying he did not have a room and that he had been sleeping on the floor in the dayroom.

After speaking with plaintiff on the intercom, Stevens came into the dayroom, followed by defendant Crites. According to plaintiff, Stevens ordered a cell to be opened. Stevens told plaintiff to get into the cell. Plaintiff claims he replied by stating that if he went into the cell, he needed the bottom bunk due to a seizure condition. During this exchange, plaintiff states that he was sitting on his mattress with his back against the wall. Following plaintiff's response about needing the bottom bunk, Stevens un-holstered his Taser and pointed it at plaintiff's chest. Plaintiff alleges that Stevens shouted: "Somebody better tell [him] I'll [shoot]." Plaintiff told Stevens that he had not "presented" himself as a threat to him or others. Nevertheless, plaintiff alleges that Stevens fired the Taser, hitting him squarely in the chest.

Plaintiff alleges that the incident described in Claim 1 constitutes excessive force in violation of the Fourth, Fifth, and Fourteenth Amendments. (Docket No. 1 at 7). He also states

that the incident constitutes supervisor liability, a failure to "intervene and prevent [k]nown [c]ruel [and] [u]nusual [p]unishment," assault and battery, and negligent and intentional infliction of emotional distress.

Claim 2 is directed at defendant Crites, a correctional officer. (Docket No. 1 at 9). Plaintiff states that after being released from segregation for the June 12 incident with defendant Stevens, he was placed back into the same pod. He claims that within ten minutes, he was "assaulted" by two detainees. Plaintiff alleges that defendant Crites rushed into the room, grabbed him, and forcefully slammed him onto the table. He further states that he was handcuffed while the other two detainees were released. According to plaintiff, Crites said: "We just brought you out of the hole [and] you come back and start a fight!"

Plaintiff states that he "slightly" turned his head – not his body – in order to reply. As he did so, Crites "excessively" shoved him forward. Plaintiff turned again, and again he states he was shoved by Crites. When plaintiff turned a third time, he alleges that Crites shoved his face into the window of an electronic door. Plaintiff alleges that the impact split his lip, chipped his tooth, and left specks of blood on the glass. He denies that this injury occurred during his fight with the two detainees. Further, he denies that he did anything more to warrant Crites's use of force than turn his head slightly in an attempt to speak. Plaintiff also states that he attempted to tell Crites that he had been jumped and only fought to defend himself.

Plaintiff alleges that the incident described in Claim 2 constitutes excessive force in violation of the Fourth, Fifth, and Fourteenth Amendments. (Docket No. 1 at 7). He also states that the incident constitutes supervisor liability, assault and battery, and negligent and intentional infliction of emotional distress.

Claim 3 is directed at defendant Colyer, a correctional officer. (Docket No. 1 at 10). Plaintiff states that on October 28, 2017, he received an undercooked slab of meat for dinner. He told Officer Golden, who relayed the message to the kitchen staff. According to plaintiff, the kitchen staff sent back another tray with an "extremely thin slice" of bologna. Plaintiff stepped into the hallway to speak with the corporal on shift. He states that he exchanged "words back [and] forth" with the corporal as to why the kitchen constantly sent him uncooked meat. Due to this exchange, the corporal had plaintiff handcuffed and sent to "the hole," meaning segregation.

On the way to segregation, plaintiff alleges that defendant Colyer snatched him away from Officer Golden and slammed him facedown into the ground. Colyer then placed his Taser against plaintiff's back and asked: "Are we going to have any more problems?" Plaintiff replied that he had hit his head and was dizzy. He claims that Colyer replied by saying: "That doesn't answer the question. If you don't answer the question [I'm] going to tase you." Plaintiff responded by saying: "If you tase me I'll sue you." At that point, he alleges that Colyer used his Taser on him for approximately eight seconds. In pain, plaintiff answered Colyer's question so that he would stop.

Plaintiff alleges that Claim 3 constitutes excessive force in violation of the Fourth, Fifth, and Fourteenth Amendments. He also states that the incident constitutes supervisor liability, failure to "[i]ntervene and prevent [k]nown [c]ruel [and] [u]nsual [p]unishment," assault and battery, and negligent infliction of emotional distress. (Docket No. 1 at 7).

Claim 4 is directed at defendant Boliva, a sheriff's deputy. (Docket No. 1 at 11). Plaintiff states that defendant Boliva advised him that the jail had a law library. On October 21, 2017, he requested that he be allowed to go to the library. According to plaintiff, he asked numerous

times, apparently using an intercom system. Finally, an officer told him to stop using the "button" because it was for "emergencies only."

Plaintiff next filled out a written request to visit the law library. Three days later, Boliva responded, telling plaintiff that he should make his request between dinner and 9:00 p.m. Plaintiff states that he followed these instructions and asked Officer Pullum if he could visit the library. Officer Pullum allegedly told plaintiff that the jail did not have law library, just a "couple" of outdated law books "back by the old visitation area." Plaintiff filed a grievance, to which the response was "to call someone on the outside to help." He alleges that "due to not having access to the courts" he could not write private counsel or get legal assistance. This forced him to apply for a public defender, at which point he was appointed to an attorney that he had previously "[f]ired" due to "ineffective counsel."

Plaintiff alleges that Claim 4 constitutes a violation of the First, Fifth, and Fourteenth Amendments. (Docket No 1 at 7).

In Claim 5, plaintiff states that defendant Cape Girardeau County Jail deprived him of adequate nutrition. (Docket No. 1 at 12). He states that he did not receive the "minimum amount of calories stipulated in the Federal (DV) Policy" and that he was denied the "minimal civilized measure of life necessities." Plaintiff alleges that he suffered physical pain, weight loss, and mental anguish. He further claims that some of his grievances were shredded by a prior lieutenant.

Plaintiff alleges that Claim 5 constitutes a violation of the Eighth and Fourteenth Amendments. (Docket No. 1 at 7).

Plaintiff seeks $800,000 in compensatory damages and $500,000 in punitive damages. (Docket No. 1 at 13).

**Discussion**

Plaintiff's complaint includes a number of excessive force claims, as well as claimed violations of his right of access to courts and his right to receive adequate nutrition. The defendants are sued in their individual capacities. Having carefully reviewed and liberally construed plaintiff's allegations, and for the reasons discussed below, the Court must dismiss plaintiff's claims against defendants Cape Girardeau County Sheriff's Office, Cape Girardeau County Jail, Cape Girardeau County Justice Center, Sheriff John Jordan, Captain James Mulcahy, and Deputy Boliva pursuant to 28 U.S.C. § 1915(e)(2)(B). However, the Court will direct the Clerk of Court to issue process upon defendants Lieutenant Todd Stevens, Officer Crites, and Deputy Colyer in their individual capacities.

**A. Defendants Cape Girardeau County Sheriff's Office, Cape Girardeau County Jail, and Cape Girardeau County Justice Center**

Plaintiff's claims against defendants Cape Girardeau County Sheriff's Office, Cape Girardeau County Jail, and Cape Girardeau County Justice Center must be dismissed because they are not suable entities. *See Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (stating that "departments or subdivisions" of local government are not "juridical entities suable as such"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they were not suable entities). These four defendants are subdivisions or departments of county government. As such, they are not distinctly suable entities and plaintiff has failed to state a claim against them.

Even if Cape Girardeau County is substituted as the proper party defendant, plaintiff has still failed to state a claim for county liability.

A local governing body can be sued directly under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Liability may attach if the constitutional violation is the result of (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). Thus, there are three ways in which a plaintiff can demonstrate the liability of a municipal entity.

First, "policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, in order to establish a claim of liability based on "custom," the plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Finally, to establish deliberate indifference for purposes of failure to train, the plaintiff must show a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff specifically names Cape Girardeau County Sheriff's Office, Cape Girardeau County Jail, and Cape Girardeau County Justice Center as defendants in this action. Despite this, these defendants are mentioned only in passing in plaintiff's statement of claim. There are no specific allegations regarding any policy, custom, or failure to train. Read broadly, the complaint seems to imply that these defendants are liable because the alleged incidents took place in jail, and involved jail or sheriff's department employees.

However, "a municipality cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691. *See also A.H. v. St. Louis Cty., Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). Rather, as noted above, a plaintiff suing a local governing body must demonstrate an unconstitutional official policy, unofficial custom, or failure to train or supervise. *See Marsh v. Phelps Cty.*, No. 17-1260, 2018 WL 3863923, at *4 (8th Cir. 2018) (recognizing municipal liability "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Plaintiff alleges no facts pertaining to an official policy, an unofficial custom, or a failure to train. Therefore, he has failed to state a

claim of county liability. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Accordingly, plaintiff's claims against defendants Cape Girardeau County Sheriff's Office, Cape Girardeau County Jail, and Cape Girardeau County Justice Center must be dismissed.

### B. Defendants John Jordan and James Mulcahy

Plaintiff's claims against John Jordan and James Mulcahy must be dismissed because plaintiff has not alleged that they have violated his constitutional rights. Neither Jordan nor Mulcahy are mentioned in plaintiff's statement of claim. The only place in the complaint where they are referenced is on the caption page. (Docket No. 1 at 2). There, plaintiff states that Jordan is the "Sheriff of Cape Girardeau" and that Mulcahy is a "Captain at the Cape Jail."

"[T]o state a claim for relief under § 1983, a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). Vicarious liability is inapplicable in § 1983 suits, meaning that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 676. As noted above, none of the allegations in plaintiff's statement of claim mentions either defendant Jordan or defendant Mulcahy. Accordingly, plaintiff has failed to demonstrate that either Jordan or Mulcahy, through their individual actions, violated plaintiff's constitutional rights.

To the extent that plaintiff is attempting to assert supervisory liability against Jordan and Mulcahy, due to their respective positions of authority, such claims also fail. "Government

officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, in order to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury. *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011). *See also Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) ("[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation"). The standard used to determine liability for failure to train is deliberate indifference. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). "A supervisor may be liable under § 1983 if he (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018).

As previously noted, plaintiff does not make any specific allegations against Jordan or Mulcahy. Simply listing each person as a defendant, and providing their job titles, is not sufficient to state a claim for supervisor liability. Instead, plaintiff is required to allege facts showing that the supervising official had notice of a pattern of unconstitutional acts committed by a subordinate, and was also deliberately indifferent to the subordinate's acts. Plaintiff has not done this. Accordingly, plaintiff's claims against defendants Jordan and Mulcahy must be dismissed.

### C. Defendant Boliva

Plaintiff's claims against defendant Boliva must be dismissed because plaintiff has not alleged that Boliva committed a constitutional violation. The only allegation plaintiff makes against defendant Boliva is that Boliva told him that the jail had a law library, and that when plaintiff wrote out a request to visit the library, Boliva took three days to respond. (Docket No. 1

at 11). Plaintiff has also attached grievances to the complaint, and based on references he makes in his statement of claim, it appears that Boliva may have been the officer who responded to some of them. However, his complaint contains no other factual allegations directed at Boliva, aside from him allegedly taking three days to respond to plaintiff's law library request.

To the extent that plaintiff is alleging that Boliva did not follow the grievance procedure or took too long processing his grievance, such a claim must fail. An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). A prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of his grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights"). Accordingly, plaintiff's claims against defendant Boliva must be dismissed.

### D. Access to Court Claim

Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This does not mean, however, that there is an "abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). It is not enough for a plaintiff to "merely allege a denial of access to a law library or adequate attorney, even if the

denial is systemic." *Sabers v. Delano*, 100 F.3d 82, 84 (1996). Rather, an inmate must demonstrate that the alleged shortcomings of the library or legal assistance program hindered his or her efforts to pursue a legal claim. *Lewis*, 518 U.S. at 351.

> To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in an actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.

*White v. Kautzky*, 494 F.3d 677, 680 (2007). For example, an inmate must show that a complaint they prepared was dismissed for technical reasons that a library's inadequacies prevented them from knowing, or that the inadequacy of a library prevented them from filing a complaint for an actionable harm. *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996).

Plaintiff alleges that he was denied access to the courts. However, the facts he has asserted are not sufficient to state such a claim. Plaintiff implies that the jail's library consists of only "a couple" of out-of-date law books. Nevertheless, he does not allege that he ever attempted to use these books and found them lacking. Moreover, it is not enough for plaintiff to simply allege a denial of access. Instead, he must demonstrate that he was hindered in pursuing a legal claim. Plaintiff alleges only that he could not write to private counsel, forcing him to apply for a public defender. He concludes this "prolonged litigation." These facts do not demonstrate that he was stopped from pursuing a legal claim. He does not allege, for instance, that he was prevented from filing a complaint, or that something he had filed was dismissed on a technicality that he might have known had the law library been adequate. Accordingly, plaintiff's access to court claim must be dismissed.

### E. Inadequate Nutrition Claim

Prisoners have a right to receive nutritionally adequate food. *Wishon v. Gammons*, 978 F.2d 446, 449 (8th Cir. 1992). *See also Divers v. Dep't of Corr.*, 921 F.2d 191, 194 (8th Cir. 1990) ("Prison officials must…provide a nutritionally adequate diet"); *Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) ("One constitutional right retained by the prisoner is the right to an adequate diet"); *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) ("Prison officials must ensure that inmates receive adequate food, clothing, and medical care"). "A plaintiff may demonstrate violation of his constitutional rights by evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016).

Plaintiff alleges that defendant Cape Girardeau County Jail subjected him to a diet that was nutritionally inadequate. As a result, he states that he suffered pain, weight loss, and long-lasting mental anguish.

As noted above, Cape Girardeau County Jail is not a distinctly suable entity. *See Owens*, 328 F.3d at 1027 (stating that "county jails are not legal entities amenable to suit"). Even if the county were substituted as a defendant, plaintiff's claim still fails because he has not alleged that the allegedly inadequate nutrition resulted from an official policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *See Mick*, 883 F.3d at 1089.

Plaintiff has not pointed to an official jail policy that he alleges is unconstitutional, nor does he assert that his receipt of a nutritionally-inadequate diet was a deliberate choice made by policymakers. He also does not allege an unofficial custom, as there are no facts pointing to a widespread pattern of unconstitutional misconduct, and no facts asserting that policymakers were deliberately indifferent to such misconduct. Finally, he has not alleged facts to demonstrate a

deliberate indifference for purposes of a failure to train, since he did not allege a pattern of constitutional violations by untrained employees. Accordingly, plaintiff has not stated an inadequate nutrition claim against Cape Girardeau County Jail.

However, plaintiff has stated a claim of inadequate nutrition against defendant Stevens. Plaintiff alleges that on June 12, 2017, his food tray had been shortened. Over the intercom, he complained that he was not getting three meals a day, and that his caloric needs were not being met. When plaintiff was told that something else from the kitchen would be sent to him, Stevens interrupted to tell plaintiff: "You['re] not getting s—t else" and "You['re] not getting nothing, get in your room." These allegations are sufficient to show that defendant had knowledge that plaintiff was not receiving enough food. Despite this knowledge, Stevens allegedly used his position of authority to deny plaintiff's request for adequate nutrition. The Court is required to accept plaintiff's factual allegations in the complaint as true, and view them in a light most favorable to him. *See Hager v. Arkansas Dep't of Health*, 753 F.3d 1009, 1013 (8ᵗʰ Cir. 2013). Accordingly, the Clerk of Court will be directed to serve process upon defendant Stevens in his individual capacity on plaintiff's claim of inadequate nutrition.

### F. Defendants Stevens, Crites, and Colyer

Plaintiff alleges that defendants Stevens, Crites, and Colyer used excessive force against him. These claims are sufficient to pass initial review.

Plaintiff does not state whether he is a pretrial detainee or a convicted inmate. The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from the use of excessive force amounting to punishment. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). *See also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (stating that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due

process of law"); and *Smith v. Conway Cty., Ark.*, 759 F.3d 853, 858 (8th Cir. 2014) (stating that "the Due Process Clause prohibits any punishment of a pretrial detainee, be that punishment cruel-and-unusual or not"). Analysis of excessive force claims under the Due Process Clause focuses on whether the defendant's purpose in using force was "to injure, punish, or discipline the detainee." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014).

On the other hand, after incarceration, excessive force is governed by the Eighth Amendment. *See Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014). Pursuant to the Eighth Amendment, the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment is forbidden. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). *See also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Regardless of whether plaintiff's claims are evaluated under the Eighth Amendment or the Fourteenth Amendment, his claims of excessive force are sufficient to pass through § 1915 review. *See Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (stating that the Fourteenth Amendment gives state pretrial detainees "rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner").

As to defendant Stevens, plaintiff alleges that Stevens deployed a Taser against his chest. According to plaintiff, at the time this occurred, he was sitting on the floor and not acting in a threatening manner. Moreover, plaintiff states that Stevens was reacting to plaintiff's complaint about his food tray. In this context, it can be inferred that Stevens did not use his Taser to maintain or restore discipline, but simply to hurt plaintiff. At this stage, plaintiff's allegations must be accepted as true and viewed in a light most favorable to him. *See Dadd v. Anoka Cty.*, 827 F.3d 749, 754 (8th Cir. 2016). Accordingly, the Clerk of Court will be directed to serve process upon defendant Stevens in his individual capacity on plaintiff's claim of excessive force.

As to defendant Crites, plaintiff alleges that Crites slammed him face-first against the window of a security door. At the time this occurred, plaintiff was handcuffed. The impact split his lip and chipped a tooth. According to plaintiff, there was no reason for Crites to slam him into the window. He states that he only turned his head to speak when Crites allegedly forced his face against the glass. Accepting these allegations as true, Crites was not acting to maintain or restore discipline. Indeed, plaintiff asserts that he had already been handcuffed and was being led to segregation. Rather, plaintiff alleges, Crites reacted violently simply because plaintiff attempted to explain himself. The Court is required to accept these allegations as true, and the Clerk of Court will be directed to serve process upon defendant Crites in his individual capacity on plaintiff's claim of excessive force.

Finally, as to defendant Colyer, plaintiff alleges that Colyer slammed him face-down on the ground and threatened to use his Taser against him. When plaintiff told Colyer he would sue him, Colyer deployed his Taser against plaintiff for approximately eight seconds. Plaintiff asserts this occurred after he had complained about his food tray. The corporal on shift handcuffed plaintiff and sent him to segregation with Officer Golden. According to plaintiff, Colyer

"snatch[ed]" him away from Golden before putting him on the ground and ultimately using a Taser against him. Accepting these allegations as true, Colyer was not acting to restore or maintain discipline. To the contrary, plaintiff was already handcuffed and, according to his complaint, was simply walking with Officer Golden when Colyer threw him to the floor. The Court is required to accept these allegations as true, and the Clerk of Court will be directed to serve process upon defendant Colyer in his individual capacity on plaintiff's claim of excessive force.

### G. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel (Docket No. 3). "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). *See also Ward*, 721 F.3d at 942 ("In civil cases, there is no constitutional or statutory right to appointed counsel…Rather a court may request an attorney to represent any person unable to afford counsel"). When determining whether to appoint counsel for an indigent litigant, the Court considers relevant factors, such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**. Pursuant to 28 U.S.C. § 1915(b)(4), the initial partial filing fee is waived.

**IT IS FURTHER ORDERED** that the institution having custody of plaintiff shall, whenever the amount in plaintiff's prison account exceeds $10.00, send monthly payments that equal 20 percent of the funds credited to the account the preceding month to the United States District Court for the Eastern District of Missouri Clerk's office, pursuant to 28 U.S.C. § 1915(b)(2), until the filing fee of $350 is paid in full.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 3) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon defendants Todd Stevens, Unknown Crites, and Unknown Colyer in their individual capacities as to plaintiff's claims of excessive force.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon defendant Todd Stevens in his individual capacity as to plaintiff's claim of inadequate nutrition.

**IT IS FURTHER ORDERED** that plaintiffs remaining federal claims against defendants Todd Stevens, Unknown Crites, and Unknown Colyer are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, and these claims are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1367(c).

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants Cape Girardeau County Sheriff's Office, Cape Girardeau County Jail, Cape Girardeau County Justice Center, John Jordan, James Mulcahy, and Unknown Boliva are **DISMISSED** without prejudice. A separate order of partial dismissal will be entered herewith. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS HEREBY CERTIFIED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this 10th day of September, 2018.

_____

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE